POTTS v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. March 3, 1902.)

No. 674.

PUBLIC LANDS—INCLOSURE—FENCE ON OWNER'S LAND—MISDEMEANOR.

Where a landowner in good faith, for the purpose of inclosing his own land, builds a fence on the line extending around the tract, such act is not unlawful, and is not a violation of the act of February 25, 1885 (23 Stat. 321), which forbids the inclosure of public lands or obstructing access thereto by one who has no claim thereto, even though such fence so connects with fenced lands of other owners as thereby to inclose unclaimed public lands.

In Error to the Circuit Court of the United States for the Eastern Division of the District of Washington.

The plaintiff in error was indicted by the grand jury for unlawfully inclosing public land in the state of Washington, by erecting and maintaining a post and wire fence around certain land owned and leased by him, thereby preventing and obstructing any and all persons from peacefully entering upon or establishing a settlement or residence upon certain tracts of public land, and preventing and obstructing passage and transit over and through said public land. The indictment contained six counts, but only the charges contained in the first, second, and fifth counts were submitted to the jury. These counts charged as follows:

"That one Robert Potts * * * did unlawfully, as owner, make, erect, construct, and maintain an inclosure of the following described public land of the United States, containing not less than 160 acres, to wit, the N. W. ¼ of section 2, township 19 north, of range 38 east of the Willamette meridian, and the S. W. ¼ of section 26, township 20 north, range 38 east of the Willamette meridian, and section 34, township 20 north, range 38 east of the Willamette meridian; said inclosure so made, erected, constructed, and maintained, consisting of and being a post and wire fence, and he, the said Robert Potts, so making and constructing said inclosure, then and there having no claim or color of title to any of said land, made or acquired in good faith, or an asserted right thereto by or under claim, made in good faith with a view to entry thereof at the proper land office, to wit, the United States land office at Spokane, in said state and district, under the general land laws of the United States,—contrary to the form of the statute in such

case made and provided, and against the peace and dignity of the United States.

"That one Robert Potts * * * did unlawfully, as part owner and agent, make, erect, construct, and maintain an inclosure of the following described public land of the United States, containing not less than one hundred and sixty acres, to wit, the N. W. ¼ of section 2, township 19 north, range 38 east of the Willamette meridian, and the S. W. ¼ of section 26, township 20 north, range 38 east of the Willamette meridian, and section 34, township 20 north, range 38 east of the Willamette meridian; said inclosure so made, erected, constructed, and maintained consisting of and being a post and wire fence, and he, the said Robert Potts, so making and constructing said inclosure, then and there having no claim or color of title to any of said land, made or acquired in good faith, or an asserted right thereto, by or under claim, made in good faith with the view to entry thereof at the proper land office, to wit, the United States land office at Spokane, in said state and district, under the general land laws of the United States at the time such inclosure was so made,—contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States."

"That one Robert Potts * * * did unlawfully, by and with a post and wire fence, prevent and obstruct from passage and transit over and through certain of the public lands, containing not less than one hundred and sixty acres, to wit, the N. W. ¼ of section 2, township 19 north, of range 38 east of the Willamette meridian, and the S. W. ¼ of section 26, township 20 north, range 38 east of the Willamette meridian, and section 34, township 20 north, range 38 east of the Willamette meridian,—contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States."

The jury found the defendant guilty as charged in these three counts, and the court imposed a sentence of one day's imprisonment in the county jail and a fine of $100, and costs of action. Writ of error was thereupon sued out to this court.

Merritt & Merritt, for plaintiff in error.

Wilson R. Gay, U. S. Atty., and Edward E. Cushman, Asst. U. S. Atty.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

It appears from the evidence that the defendant is the owner of section 25, township 20 north, range 38 east of Willamette meridian, Spokane county, Wash., and has a lease of section 36 in the same township. These two sections adjoin, and the defendant had inclosed them with a wire fence, thus making an inclosure two miles long north and south, and approximately one mile wide east and west. A county road meanders along the east line of said sections. The government land charged in the indictment to have been unlawfully inclosed by the fence of the defendant is the N. W. ¼ of section 2, township 19 north, of range 38 east, and the S. W. ¼ of section 26, and section 34, township 20 north, range 38 east. None of this land adjoins that inclosed by the defendant; but it is contended that the defendant, by connecting his fence with that of other owners of land on the north and south, has cut off the government land from access to the county road, and is thus violating the statute prohibiting the inclosing of government land. The chain of private fences complained of immediately incloses only the lands of the various owners, and the inclosing

of or obstruction of passage to the government land is merely an incident arising from the peculiar situation of the land with relation to the county road.

The act of February 25, 1885 (23 Stat. 321), provides as follows:

"That all inclosures of any public lands in any state or territory of the United States, heretofore or to be hereafter made, erected, or constructed by any person, party, association, or corporation, to any of which land included within the inclosure the person, party, association, or corporation making or controlling the inclosure had no claim or color of title made or acquired in good faith, or an asserted right thereto by or under claim, made in good faith with a view to entry thereof at the proper land office under the general laws of the United States at the time any such inclosure was or shall be made, are hereby declared to be unlawful, and the maintenance, erection, construction, or control of any such inclosure is hereby forbidden and prohibited. * * *

"Sec. 3. That no person, by force, threats, intimidations, or by any fencing or inclosing, or any other unlawful means, shall prevent or obstruct, or shall combine and confederate with others to prevent or obstruct, any person from peaceably entering upon or establishing a settlement or residence on any tract of public land subject to settlement or entry under the public land laws of the United States, or shall prevent or obstruct free passage or transit over or through the public lands. * * *"

The trial court instructed the jury, in this connection, as follows:

"The law which I have read to you has for its obvious purpose the protection of the rights of the public in and to all of the public domain, as against the selfishness of any particular individual, association, or company, or set of individuals, to appropriate to their own use the public domain and exclude the public from the equal enjoyment of the use of it while it remains public and unclaimed by private individuals. The law is broad in its terms, and it is intended to prohibit any manner of inclosing the public domain by a person or a company or a corporation that has no color of title or right to have the exclusive use of it. The inclosure by a fence, or a combination of fences, or joining of fences that is wholly upon the land which the person does own, is unlawful, if in effect it does inclose and shut out the public from any part of the public domain. A man has no right to build a fence upon his own land, that connects with another fence, that is so connected as to form an inclosure of public land, and shut the public out, or prevent their passage over the public lands."

This instruction was plainly directed to the charge contained in the fifth count of the indictment, and this count appears to have been framed under section 3 of the above-named act. Upon the evidence in the case and the charge contained in the count, the question to be submitted to the jury was whether the defendant had, by "fencing or inclosing, or any other unlawful means," prevented or obstructed free passage or transit over or through the public lands of the United States. By a well-known rule of construction the words "or any other unlawful means," in describing and giving scope to the prohibited acts, relate back to and qualify the preceding words "fencing" and "inclosing," so that those words must be read as "unlawful fencing" and "unlawful inclosing." In other words, the "fencing" or "inclosing" of land does not become unlawful merely because either of these acts prevent or obstruct any person from peaceably entering upon or establishing a settlement or residence on a tract of the public land subject to settlement or entry under the public land laws of the United States. The act of a person in fencing or inclosing his own land is lawful. It is also lawful for a person to fence and inclose his own land up to a

point where it connects immediately with the fence or inclosure of adjoining land owned by another. It is only when, under the guise of inclosing his own land, a person builds a fence for the purpose and with the intention of inclosing the public lands of the government, that the fence or inclosure becomes unlawful. This is the law as declared by the supreme court in the case of Camfield v. U. S., 167 U. S. 518, 17 Sup. Ct. 864, 42 L. Ed. 260. In that case the defendants had acquired the right to use all the odd-numbered sections of land lying within certain townships, and built fences around the boundary lines of the townships. By an ingenious arrangement of crossing the township boundary line at each section line, the fence was constructed entirely upon the odd-numbered sections, and was thus located entirely upon the land of the defendants, though completely surrounding and inclosing the even-numbered sections belonging to the government. The court held the defendants' action to be within the letter of the statute, as actually inclosing public lands without any color of title to the lands, and that the fence was therefore a nuisance, subject to abatement by the government, under the act of February 25, 1885. But the court said, in the course of its opinion:

"It is no answer to say that, if such odd-numbered sections were separately fenced in, which the owner would doubtless have the right to do, the result would be the same as in this case, to practically exclude the government from the even-numbered sections, since this was a contingency which the government was bound to contemplate in granting away the odd-numbered sections. So long as the individual proprietor confines his inclosure to his own land, the government has no right to complain, since he is entitled to the complete and exclusive enjoyment of it, regardless of any detriment to his neighbor; but when, under the guise of inclosing his own land, he builds a fence which is useless for that purpose, and can only have been intended to inclose the lands of the government, he is plainly within the statute, and is guilty of an unwarrantable appropriation of that which belongs to the public at large."

In the case at bar, however, the evidence tends to show that no public land had actually been inclosed by the fence of the defendant alone. He had, it appears, constructed a fence around two sections of his own land. This land is situated between certain public lands and the county road. Other owners of land in the vicinity had formerly fenced their holdings, apparently without complaint from the government or adjoining settlers. The fence of the defendant, connecting with the fences of the other owners, had formed a chain of fences which presented a barrier between the public land in question and the county road. It is evident that this portion of the country is not well populated, and that public roads are few, as the greater part of the public land claimed to be unlawfully inclosed by the fence in question is two miles from the county road. Upon this evidence it was clearly the duty of the court to submit to the jury the question whether the defendant's fence or inclosure was erected by him in good faith to inclose his own land, or whether, in joining his fence to that of others, it was his intent and purpose to prevent or obstruct any person from peaceably entering upon, or establishing a settlement or residence upon, the tract of public land described in the indictment. This the court did not do, but instructed the jury that a fence built

by a person upon his own land was unlawful, if in effect it inclosed and shut out the public from any part of the public domain. This instruction, as a statement of the law upon the subject, was too broad, and was therefore subject to objection.

The other errors assigned are without merit, and require no discussion. For the reasons stated, the judgment of the circuit court is reversed, with directions to grant a new trial.