THOMAS v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. February 6, 1905.)

No. 1,090.

1. PUBLIC LANDS—UNLAWFUL INCLOSURE—FENCES.

Where defendant constructed a fence inclosing public lands in violation of Act Feb. 25, 1885, c. 149, 23 Stat. 321 [U. S. Comp. St. 1901, p. 1524], it was no defense that only a part of the fence forming the inclosure belonged to him, if, by joining his fence to the fence constructed by others, he availed himself of the latter to make a complete inclosure.

[Ed. Note.—For cases in point, see vol. 41, Cent. Dig. Public Lands, § 25.

2. SAME—COMPLETE INCLOSURE.

Where defendant constructed a fence inclosing public lands in violation of Act Feb. 25, 1885, c. 149, 23 Stat. 321 [U. S. Comp. St. 1901, p. 1524], evidence that he took advantage of a lake to make a part of his inclosure, and that, though the fence extended into the lake, cattle could get around the ends thereof at periods of low water, and that there was a gap of three-quarters of a mile across an impassable cañon, was insufficient to establish that the inclosure was not complete.

Appeal from the District Court of the United States for the District of Montana.

The United States instituted a suit in equity against the appellant under the provisions of the act of Congress entitled "An act to prevent unlawful occupancy of the public lands." Chapter 149, p. 477, Supp. Rev. St. U. S. Act Feb. 25, 1885, c. 149, 23 Stat. 321 [U. S. Comp. St. 1901, p. 1524]. The bill of complaint alleges that an affidavit was filed with the United States District Attorney, as provided for in the second section of the act; that the United States owns the lands described in the complaint, and that the same are public lands; that the appellant has violated the provisions of said act by unlawfully inclosing and fencing said lands, and maintaining said unlawful inclosure over the same, occuping and asserting exclusive right and control thereof, and disallowing all other persons and all other stock except his own, or by his permission, to go upon or pass over said lands; that, by force, threats, and intimidations, and by fencing and inclosing, and other unlawful means, he has prevented and obstructed, and combined and confederated with others to prevent and obstruct, any and all persons from

peaceably entering upon and establishing a settlement and residence on said described lands or any thereof; that at all times stated in the bill the appellant has prevented and obstructed, and does now prevent and obstruct, free passage and transit over and through said lands, or any part of the same, by fences and other unlawful means. The appellant answered the bill, denying that said lands, or any portion thereof, are or have at any time been inclosed with any fences erected or maintained by him; denying that the lands are in his possession or exclusive use or occupancy; denying that he ever erected or maintained, or now maintains, any fences upon any of said described lands; denying that he has any use or occupation of said lands, except that certain stock, cattle, and animals belonging to him roam over and graze upon the same, as by law they may do, said lands being a part of the public domain; and denying that the appellant has or does assert or exercise exclusive right or control over the lands, or any part thereof, or that he has disallowed other persons or stock to go upon or pass over said lands, or that he has combined or does combine with others to prevent other persons from peaceably entering upon and establishing settlement and residence thereon. Upon the testimony the court entered a decree in favor of the appellee and against the appellant; finding that at the time of the commencement of the suit the appellant was maintaining and controlling, and has since that time maintained and controlled, strong and substantial fences upon the lands described in the bill, and that he was without right in so doing. The decree required the appellant to take down and remove all the fences surrounding said lands, and enjoined him from further interfering with said lands, and ordered that, in case of his failure to comply with the decree, the United States marshal remove said fences.

O. F. Goddard, for appellant.

Carl Rasch, for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is assigned as error that the court held that the lands described in the bill were inclosed by a fence owned or controlled by the appellant, for the reason that the evidence shows that said lands were not entirely inclosed by any fences, either of the appellant or of any one else, in connection with the fence of the appellant, and that the court erred in requiring the appellant to remove fences owned and controlled by others, and in which the appellant had no interest. The appellant offered no evidence whatever on the hearing of the case. The evidence for the appellee showed beyond dispute that some 84 sections of odd and even numbered sections of land were substantially inclosed. The land is situated within the primary limits of the grant made in 1864 to the Northern Pacific Railroad Company. Prior to the construction of the inclosure the appellant purchased from the railroad company the odd-numbered sections within the area enclosed. The even-numbered sections are public lands belonging to the United States. The greater portion of the fences which constitute the inclosure were made by the appellant. One section of the fence between the main inclosure and one Molt, to the north of Big Lake (being a portion of the north line of the inclosure), was a division fence, but the evidence shows that the greater portion of that fence was built by the appellant. There was evidence that the appellant constructed or caused to be constructed all the fences necessary to complete the inclosure without joining with the fences of any one else. It was undisputed that the appellant told the witness

Story that he had about 84 sections which he claimed to own, and that it was all inclosed with good fences. There was other evidence that the appellant used for grazing all the lands in the inclosure, and that he allowed no one else to pasture there, and that his own stock grazed on all parts thereof. It was proven that in an action in the District Court of the Seventh Judicial District of Montana, for Yellowstone county, the appellant on January 22, 1903, obtained a decree against said Story and William Huff, who were defendants therein, enjoining them from driving any cattle in or through any of the lands mentioned in the complaint in said suit, and to desist and refrain from herding cattle over or upon said lands, or from suffering them to trespass thereon; said lands being the lands which are in the inclosure involved in the present suit. And the complaint in that case alleged that the lands therein described were inclosed by a good and substantial fence, the property of the plaintiff therein. But if it were true that any portion of the fence forming the inclosure were the fence of another, the appellant could not justify himself, nor avoid the penalty of the statute, if by joining his fences to said fence so constructed he availed himself of it to make a complete inclosure. Whether he took advantage of a portion of an existing fence, or a natural barrier impassable for cattle, if he constructed his surrounding fence with reference thereto, he is undoubtedly guilty of making and maintaining an inclosure in violation of the law. United States v. Brighton Ranche Co. (C. C.) 26 Fed. 218.

But it is urged that the inclosure is not complete. It is claimed that there is an opening at Big Lake of two or three miles in extent. In other words, the appellant took advantage of Big Lake to make it a part of his inclosure, and now claims the benefit of the fact that when the waters of the lake recede, as they do in the late summer or early fall, cattle can go around the ends of his fences, which extend into the lake, and may thereby enter the inclosure. It is shown, also, that there is a gap of three-quarters of a mile in the fence at a point where a cañon intervenes. It is admitted that the cañon is impassable at that point; but it is said that cattle, by going three miles down the banks of the cañon, can enter the cañon, and then by going up the cañon, can get within the inclosure. It is not shown how far they would have to proceed within the inclosure before they could emerge from the cañon. It is absurd to say that this is an opening in the inclosure. It was evidently left unfenced because it could not be fenced, and because it was deemed unnecessary to make other provision against cattle entering through the cañon. Nor can the appellant maintain that his inclosure is not complete by showing that by the 1st of September in each year cattle may, if they possess sufficient intelligence or are driven there, go around the ends of the fences which extend into the lake. There is no evidence that cattle or stock of any kind ever entered the inclosure through these so-called openings. The whole contention that there are openings in the inclosure, and that therefore the appellant is not amenable to the law, is so plainly without merit as to require no further discussion.

The decree of the Circuit Court will be affirmed.