### UNITED STATES v. JOHNSTON.

(Circuit Court, N. D. California. March 10, 1908.)

#### No. 13,772.

PUBLIC LANDS (§ 19*)—"UNLAWFUL INCLOSURE"—ACTS CONSTITUTING.

Defendant owned a tract of 5,000 acres of grazing land with a mountain range to the east and north of it. He built a fence from the range on the east westward to the south of his land, and then northwestward to the north range, inclosing between such fence and the mountains his own land and also public lands, which he used for a pasture. There were two breaks in the fence through which, as well as over the mountains, trails led into the pasture, but for practical purposes the fence and mountains prevented defendant's stock from straying out and other stock from coming in. *Held*, that such fence did not constitute an unlawful inclosure of public lands within Act Feb. 25, 1885, c. 149, 23 Stat. 321 (U. S. Comp. St. 1901. p. 1524).

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 25; Dec. Dig. § 19.*]

R. T. Devlin, U. S. Atty., and George Clark, Asst. U. S. Atty. Cushing, Grant & Cushing, for defendant.

DE HAVEN, District Judge. Upon consideration of the evidence, I find the following facts:

First. The defendant, at the time of the commencement of this action and for many years prior thereto, was maintaining a fence, the line of which is approximately described as follows: Commencing near the southeast corner of township 11 north, range 4, Mt. Diablo Merid-

---

ian, running thence westerly to a point on the county road near the southwest corner of section 35, of said township, thence in a northwesterly direction, following the line of the county road, to a point near the northwest corner of section 6, in said township. This fence is all constructed upon lands owned by the defendant, and is a continuous line of fence, with the exception of a gap or opening therein in section 22, about one-half mile in width and another gap about a mile in length commencing near the northeast corner of section 21, and ending near the northeast corner of section 17, from which last point the fence of defendant extends in a northwesterly direction to the northwest corner of section 6 of said township. The land where these gaps or openings in the fence occur is mountainous and covered with thick brush and timber which for all practical purposes will turn cattle, but cattle can be driven through such openings, and may occasionally find their way through them and onto the land described in the bill without being driven. The fence thus maintained connects at the southeast corner of the alleged inclosure with a mountain range known as the Blue Ridge, lying east of the land described in the bill of complaint, and at the northwest corner of the alleged inclosure said fence connects with a spur of said Blue Ridge lying upon the north of said lands. There are two or more trails crossing the Blue Ridge range of mountains on the east and the spur of said Blue Ridge on the north, but stock running upon the land lying between the said fence maintained by the defendant and the mountain ranges on the north and east of the land described in the complaint seldom stray from such land by passing over these trails. The Blue Ridge range of mountains and the spur connecting therewith and the fence maintained by the defendant inclose in the manner above set forth the lands described in the bill of complaint and some 5,000 acres of land owned by the defendant; and this inclosure is ordinarily and for all practical purposes sufficient to keep stock from straying onto or from said lands, although it is possible for cattle to so stray by going in or out over the trails above referred to or through the openings in the defendant's fence above described; and persons desiring to enter upon the lands described in the complaint can do so by going through said openings in the fence and by means of the trails above mentioned, but it would be difficult to go through said gaps or openings in the fence without clearing the brush away and grading a road or trail for that purpose.

Second. The lands described in the complaint as belonging to the United States are of little value, and the main purpose for which the defendant maintains the fence described in finding No. 1 is to keep stock belonging to other persons from straying upon the land owned by him and to keep his own stock upon said lands, although all of the public lands described in the complaint lying between said fence and the ranges of mountains on the north and east with which said fence connects are used by the defendant as a range for his cattle in connection with the lands owned by him.

Third. The defendant does not assert any claim or title to the public lands described in the complaint, and the fence, mentioned in finding No. 1, is maintained by him because by so doing he is enabled to sufficiently inclose the lands owned by him to keep his own stock on,

and the stock of others off of, said lands at less cost and expense to him than would be required to inclose his lands on all sides by an artificial fence.

As a conclusion of law from the foregoing facts, I find:

(1) That the fence described in finding No. 1 does not constitute an unlawful inclosure of public lands within the meaning of section 1 of the act of February 25, 1885 (chapter 149, 23 Stat. 321 [U. S. Comp. St. 1901, p. 1524]). (2) That the maintenance of said fence in the manner described in the above findings is not in violation of section 3 of said act of February 25, 1885. (3) That the plaintiff is not entitled to the relief prayed for nor to any relief; that defendant is entitled to judgment, dismissing the bill, and for his costs.

Let such a decree be entered.