HOMER et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. January 24, 1911.)

No. 3,421.

1. PUBLIC LANDS (§ 19*)—"UNLAWFUL INCLOSURE"—CONSTRUCTION OF STATUTE.

Under Act Feb. 25, 1885, c. 149, § 1, 23 Stat. 321 (U. S. Comp. St. 1901, p. 1524), which makes unlawful "all inclosures" of public lands not claimed in good faith by the person inclosing the same, a fence built upon one's own land, which in fact incloses public lands of the United States, is unlawful, regardless of the intent with which such fence is built or maintained.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 25, 26; Dec. Dig. § 19.*]

2. PUBLIC LANDS (§ 19*)—"UNLAWFUL INCLOSURE"—CONSTRUCTION OF STAT-
UTE.

    Where defendants maintained a fence around a large tract of land, the greater part of which they owned, but which also included smaller tracts of public land of the United States, such inclosure was not rendered lawful by again inclosing the government tracts by fences built around each by defendants on their own land, thus segregating them from the larger inclosed tract.

    [Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 25, 26; Dec. Dig. § 19.*]

    Van Devanter, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the District of Wyoming.

Suit in equity by the United States against Robert H. Homer and others. Decree for complainant, and defendants appeal. Affirmed.

Nellis E. Corthell, for appellants.

Timothy F. Burke, U. S. Atty., and Edward T. Clark, Asst. U. S. Atty.

Before VAN DEVANTER and HOOK, Circuit Judges, and CARLAND, District Judge.

CARLAND, District Judge. November 30, 1908, the United States filed a bill in the United States Circuit Court for the District of Wyoming against appellants for the purpose of having an inclosure of land by them adjudged to be unlawful and for a removal of the same. The fence complained of inclosed about 3,660 acres of land to which, it was alleged in the bill, appellants nor any one else had any claim or color of title made or acquired in good faith or an asserted right thereto by or under claim made in good faith with the view to entry thereof at the proper land office under the general laws of the United States. The action was brought under Act Feb. 25, 1885, c. 149, 23 Stat. 321 (U. S. Comp. St. 1901, p. 1524). There was an answer and replication, and the cause came on for hearing upon the following agreed statement of facts.

"Agreed Statement of Facts in Evidence.

    "It is stipulated and agreed between the parties hereto that the facts upon the issues joined in this cause are as follows:

    "(1) The lands described in the bill of complaint are grazing lands situate within the original land grant or 20-mile limits of the Union Pacific Railroad Company, the odd numbered sections of land within which limits were granted to said company by the act of Congress entitled an act to aid in the construction of a railroad and telegraph line from the Missouri river to the Pacific Ocean and to secure to the government the use of the same for postal, military and other purposes, approved July 1, 1862, the act of Congress entitled 'An act to amend an act entitled an act to aid in the construction of a railroad and telegraph line from the Missouri river to the Pacific Ocean and to secure to the government the use of the same for postal, military and other purposes, approved July 1, 1862, approved July 2, 1864,' and the defendants at all times material to this cause were in possession of the said odd numbered sections, succeeding to the title of the railroad company.

    "(2) The said lands described in the bill of complaint are within a general inclosure made by the fence of the defendants placed on the outer boundary of their said lands and built for the primary purpose of separating their

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

lands aforesaid and other lands of the defendants from the public roads and from the lands of other proprietors.

"(3) At the time of the hearing in this cause, the following described tracts of lands, to wit: The west half of the west half of section 14; and all of section 22 in township 14 north of range 74 west; and the north half of section 8 in township 13 north of range 74 west—were the only lands of the plaintiff within the limits of the said general inclosures being surrounded on all sides by lands of the defendants. The defendants had erected and maintained a substantial and sufficient fence upon their own lands separating said section 22 and the said north half of section 8 from the lands of the plaintiff, thus excluding the live stock of the defendants from said lands of the plaintiff. The west half of section 14 was not separated by a fence or other physical barrier from the lands of the defendants. The relative situation of the lands of the defendants and the said lands of the plaintiff is as shown on the map hereunto annexed, marked 'Exhibit A.' and the situation of the fences, both exterior and divisional, is shown by the heavy lines upon the said map marked with crosses."

Upon the consideration of said agreed statement of facts, the Circuit Court rendered the following decree.

"Decree.

"This cause coming on to be heard, the plaintiff appearing by Timothy F. Burke, United States attorney for the district of Wyoming, and the defendants appearing in person and by counsel, N. E. Corthell, Esq., and it being

made to appear to the court that at the time of the commencement of this suit the defendants had and maintained a fence, which, together with other fences belonging to other parties, inclosed a large amount of lands belonging to the plaintiff as set forth in its bill of complaint herein, but that since the filing of said bill, and before the filing of the answer herein, the defendants have reconstructed portions of their fence and acquired certain of the lands charged in the bill of complaint herein to be illegally inclosed, so that it is found that the defendants at this time have wrongfully within their said inclosure only so much of the lands described in the bill of complaint as are described as follows, to wit, the west half of the west half of section 14 and section 22, in township 14 north of range 74 west of the Sixth principal meridian, and the north half of section 8 in township 13 north of range 74 west of the Sixth principal meridian. It is therefore considered and ordered that, unless the defendant Robert H. Homer and the Red Butte Land & Live Stock Company, a corporation, shall remove so much of said fence and fences as go to inclose the west half of the west half of section 14 and section 22 in township 14 north of range 74 west of the Sixth principal meridian and the north half of section 8 in township 13 north of range 74 west of the Sixth principal meridian as are herein found to be illegally maintained by them within five days from the date of this decree, to wit, on or before the 7th day of December, A. D. 1909, that then and in such case the marshal of the United States for the district of Wyoming shall, and he is hereby ordered to, summarily destroy said fences or so much thereof as go to inclose the above specifically described tract or tracts of land so as above found to be illegally maintained, and the costs of his so doing shall be taxed as a part of the costs of this case."

The decree further provided that the defendants, their agents, servants, and employés, should be perpetually enjoined from thereafter maintaining and keeping up any fence or fences that should operate or have the effect of inclosing any of the above lands specifically described. Section 1 of chapter 149, 23 Stat. 321, reads as follows:

"That all inclosures of any public lands in any state or territory of the United States heretofore or to be hereafter made, erected or constructed by any person, party, association or corporation, to any of which land included within the inclosure the person, party, association or corporation making or controlling the inclosure had no claim or color of title made or acquired in good faith, or an asserted right thereto by or under claim, made in good faith with a view to entry thereof at the proper land office under the general laws of the United States at the time any such inclosure was or shall be made, are hereby declared to be unlawful and the maintenance, erection, construction or control of any such inclosure is hereby forbidden and prohibited; and the assertion of a right to the exclusive use and occupancy of any part of the public lands of the United States in any state or any of the territories of the United States without claim, color of title or asserted right, as above specified as to inclosure, is likewise declared unlawful and hereby prohibited."

Section 2 of said chapter 149 provides that:

"In any case if the inclosure shall be found to be unlawful, the court shall make the proper order, judgment or decree for the destruction of the inclosure in a summary way unless the inclosure shall be removed by the defendants within five days after the order of the court."

It appears from the agreed statement of facts that the west half of the west one-half of section 14 is within the general inclosure made by the fence of the appellant, built for the primary purpose of separating their lands from the public roads and from the land of other proprietors. It also appears that section 22, and the north half of section 8 are not only within the above-mentioned general inclosure, but that appellants have built and maintained a substantial and sufficient fence upon their own lands, separating said section 22 and the north

half of section 8 from the lands of appellee, thereby excluding the stock of appellants from said land. Whatever the purpose of appellants may have been, the fact is that the west half of section 14 is inclosed by one fence and section 22 and the north half of section 8 by two. The fences complained of were built upon appellants' own land, and we think it is fair to say, so far as the record shows, were not built with the primary intent or purpose to unlawfully inclose the lands herein mentioned except as appellants may be held to have intended the natural and probable consequences of their acts. The fencing scheme adopted in regard to section 22 and the north half of section 8 for the purpose of excluding the stock of appellants from said lands, we do not think can be lawfully permitted, for, if one section can be so fenced, many sections can be fenced out in the same way. To build a fence which completely incloses a section of land thereby segregating it from a larger inclosure and then to maintain that the section is not inclosed for the reason that the party fencing the same intended to fence the section out of the inclosure, illustrates forcibly how much a person's intention has to do with cases arising under the law in question. The question presented in this case may be stated as follows: Is a fence built upon one's own land which incloses public lands of the United States an unlawful inclosure of such public lands regardless of the intent with which such fence is built. The statute itself, so far as the section now being considered is concerned, makes no mention of any specific intent. It condemns "all inclosures." In the case of United States v. Buford, 8 Utah, 173, 30 Pac. 433, it was held that a specific intent was not necessary in a prosecution for violating the statute in question, and that a fence built entirely on the land of the owner which in fact inclosed public lands was an unlawful inclosure. This court, in the case of Camfield v. United States, 66 Fed. 101, 13 C. C. A. 359, held that one's intent in building a fence was immaterial if in fact it inclosed public lands. This case was taken by appeal to the Supreme Court (Camfield v. United States, 167 U. S. 518, 17 Sup. Ct. 864, 42 L. Ed. 260), and affirmed. Mr. Justice Brown, in delivering the opinion of the court, at pages 524, 525, of 167 U. S., at page 867 of 17 Sup. Ct. (42 L. Ed. 260), said:

"It needs no argument to show that the building of fences upon public lands with intent to inclose them for private use would be a mere trespass, and that such fences might be abated by the officers of the government or by the ordinary processes of courts of justice. To this extent no legislation was necessary to vindicate the rights of the government as a landed proprietor. But the evil of permitting persons who owned or controlled the alternate sections, to inclose the entire tract, and thus to exclude or frighten off intending settlers, finally became so great that Congress passed the act of February 25, 1885, forbidding all inclosures of public lands and authorizing the abatement of the fences. If the act be construed as applying only to fences actually erected upon public land, it was manifestly unnecessary, since the government as an ordinary proprietor would have the right to prosecute for such a trespass. It is only by treating it as prohibiting all 'inclosures' of public lands by whatever means that the act becomes of any avail."

Again, on page 525 of 167 U. S., at page 867 of 17 Sup. Ct. (42 L. Ed. 260), the learned justice said:

"If it be found to be necessary for the protection of the public or of intending settlers to forbid all inclosures of public lands, the government may do

so, though the alternate sections of private lands are thereby rendered less available for pasturage. The inconvenience or even damage to the individual proprietor does not authorize an act which is in its nature a purpresture of government lands."

Again, at page 527 of 167 U. S., at page 867 of 17 Sup. Ct. (42 L. Ed. 260):

"These grants (referring to railroad grants) were made in pursuance of the settled policy of the government to reserve to itself the even numbered sections for sale at an increased price; and if the defendants in this case chose to assume the risk of purchasing the odd numbered sections of the railroad company for pasturage purposes without also purchasing or obtaining the consent of the government to use the even numbered sections, and thereby failed to derive a benefit from the odd numbered ones, they must call upon their own indiscretion to answer for their mistake."

There is an expression in the foregoing opinion found at page 528 of 167 U. S., at page 868 of 17 Sup. Ct. (42 L. Ed. 260), which standing alone might lend support to the contention of the appellants. In arriving, however, at what has been decided in a particular case, we must take the opinion of the court as a whole and construe it with reference to the issues which were before the court for decision. The Camfield Case was heard on an exception to defendant's answer to the effect that said answer did not state facts sufficient to constitute a defense to the bill. The answer sought to justify the erection of the fence in that case on the ground that defendants owned all the odd numbered sections upon which the fence was built, and that they were engaged in building large reservoirs for the purpose of irrigating the land by them owned. They also denied that they had any intention of monopolizing the even numbered sections or to exclude the public therefrom. With these allegations in the answer, this court affirmed the judgment of the Circuit Court abating the fence, and the Supreme Court, in affirming the judgment of this court, necessarily decided that building a fence on one's own land without an intention of inclosing lands of the United States was no defense, if in fact the lands mentioned were actually inclosed.

In view of the judgment actually rendered by the Supreme Court in the Camfield Case, we have no reason to believe that the court intended to lay down a contrary doctrine in using the language found at page 528 of 167 U. S., at page 868 of 17 Sup. Ct. (42 L. Ed. 260). The case of Potts v. United States, 114 Fed. 52, 51 C. C. A. 678, is not in point, as that case was decided upon the ground that Potts had not in fact inclosed any public land. In United States v. Johnston, 172 Fed. 635, a case in the Circuit Court for the Northern District of California, the facts were much different from those in the case at bar, and the opinion of the court in the case last mentioned would seem to be in conflict with the decision of the Court of Appeals of the Ninth Circuit in the case of Thomas v. United States, 136 Fed. 159, 69 C. C. A. 157. Upon a careful review of the law and the facts, we are constrained to hold that the judgment of the Circuit Court was right, and that the question heretofore stated in this opinion must be answered in the affirmative.

In the present case, upon the admitted facts, some hardship seems to result from enforcing the law; but such hardship cannot be relieved

by the court. Purchasers of odd numbered sections of land from the railroad company take the same with knowledge that the United States may retain the ownership of the even numbered sections indefinitely; therefore they take such lands with knowledge that the condition which exists in the present case may arise at any time. Complaint is also made that the decree herein set forth is so indefinite as to render it impossible of enforcement. In other words, the defendants say that the court has not informed them just what they shall do or what the marshal shall do in case they do not obey the decree within the time limited therein. We think that if the defendant really wanted to obey the decree there would be no difficulty in finding a way to do so. The decree should receive a reasonable interpretation in view of the facts shown by the record, and, thus interpreted, we think, that the fences which immediately inclose section 22 and the north half of section 8 should be abated in accordance with the command of the decree, and that such an opening should be made in the general inclosure as will allow free ingress and egress to the public lands in question.

The decree below should be affirmed, and it is so ordered.

VAN DEVANTER, Circuit Judge (dissenting). The agreed statement makes it plain that the purpose and effect of the fences immediately about section 22 and the north half of section 8 are to exclude those lands from the appellants' inclosure and from the use made of it by them. In other words, those lands, instead of being within, are without, that inclosure and are in the same situation as if the appellants, with the purpose of inclosing and using only their own land, had made a separate inclosure of each of their sections and lesser tracts. The appellants undoubtedly have the right to make one or many inclosures of their own land, so long as they do not include therein other land; and this regardless of any incidental effect which their inclosures may have upon public land not included therein. The purpose of the statute relied upon is not to abridge the usual rights of individual proprietors, but only to protect public land against unwarrantable appropriation and to preserve to the public at large their rights therein. This, as it seems to me, is fully recognized in Camfield v. United States, 167 U. S. 518, 17 Sup. Ct. 864, 42 L. Ed. 260. There an individual proprietor of alternate odd numbered sections surrounded those sections and also the intervening even numbered sections of the government by a fence, the obvious purpose and effect of which were to embrace both classes of sections in a single inclosure and to appropriate the even numbered sections of the government to the same use which he made of his odd numbered sections. Of this it was said by Mr. Justice Brown, speaking for the court:

"It is no answer to say that, if such odd numbered sections were separately fenced in, which the owner would doubtless have the right to do, the result would be the same as in this case, to practically exclude the government from the even numbered sections, since this was a contingency which the government was bound to contemplate in granting away the odd numbered sections. So long as the individual proprietor confines his inclosure to his own land, the government has no right to complain, since he is entitled to the complete and exclusive enjoyment of it, regardless of any detriment to his neighbor; but when, under the guise of inclosing his own land, he builds a fence which

is useless for that purpose, and can only have been intended to inclose the lands of the government, he is plainly within the statute and is guilty of an unwarrantable appropriation of that which belongs to the public at large."

In principle, Potts v. United States, 51 C. C. A. 678, 114 Fed. 52, is to the same effect.

I conclude that as to section 22 and the north half of section 8 the appellants do not violate the statute, and that their inclosure is unlawful only because it includes the west half of the west half of section 14, which is public land.