HANLEY v. UNITED STATES. †

(Circuit Court of Appeals, Ninth Circuit. February 6, 1911.)

No. 1,814.

1. Public Lands (§ 19*)—Unlawful Inclosure—Prosecution.

Whether defendant, who was general manager of a large stock ranch owned by a corporation, on which there was a fence which, together with natural barriers, inclosed a large quantity of government land, was personally chargeable with the offense of maintaining such inclosure in violation of Act Feb. 1885, c. 149, § 1, 23 Stat. 321 (U. S. Comp. St. 1901, p. 1524), held, under the evidence, a question for the jury.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 19.*]

2. Public Lands (§ 19*)—Prosecution for Unlawful Inclosure—Instructions.

The charge of the court in a prosecution for maintaining an unlawful inclosure of public lands in relation to evidence of the intention and purpose with which the fences complained of were built and maintained considered, and held without error.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 19.*]

3. Public Lands (§ 19*)—Prosecution for Unlawful Inclosure—Instructions.

Act Feb. 25, 1885, c. 149, § 1, 23 Stat. 321 (U. S. Comp. St. 1901, p. 1524), prohibits the construction or maintenance of any inclosure of public land by one having no claim or color of title thereto. Section 4 provides that any person violating the act "whether as owner, part owner, agent, or who shall aid, abet, counsel, advise or assist in any violation thereof," shall be deemed guilty of a misdemeanor. Held that, under an indictment charging only the maintenance of such an inclosure, the defendant could not be convicted of having aided, abetted, counseled, advised, or assisted in its maintenance.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 19.*]

In Error to the District Court of the United States for the District of Oregon.

William Hanley was convicted of a criminal offense, and brings error. Reversed.

C. E. S. Wood and John M. Gearin, for plaintiff in error.

John McCourt, U. S. Atty.

Before GILBERT and ROSS, Circuit Judges, and HANFORD, District Judge.

ROSS, Circuit Judge. The plaintiff in error was defendant in the court below to an indictment containing two counts, the first of which charged him with unlawfully maintaining and controlling certain fences, which, together with natural barriers and cross-fences, inclosed a large body of public land of the United States situated in Harney county, state of Oregon, and the second of which counts charged him with unlawfully preventing and obstructing persons from peaceably entering upon or establishing a settlement or residence on the tracts of public land within the inclosure, and preventing and obstructing their passage over and through the public lands so inclosed by means of the fences described in the first count, contrary to the provisions of Act

Cong. Feb. 25, 1885, c. 149, 23 Stat. 321 (U. S. Comp. St. 1901, p. 1524). Upon the trial of the issues made by the defendant's plea of not guilty, a verdict was rendered in his favor upon the second count of the indictment and of guilty under the first count.

The inclosure complained of was constructed many years prior to the times in question here by one Peter French, who was the owner of a large amount of land called the "P Ranch," upon which he had a great many head of stock, and consisted of a wire fence fastened to posts set about 30 feet apart which was erected upon a string of 40-acre tracts of land owned by French, and extending many miles to where it connected with natural barriers consisting of precipitous rim rock several hundred feet in height. The ranch consisted of about 140,000 acres, and within the inclosure were also many thousand acres of public land of the United States. Several public roads pass through the lands over which the government mails are carried, and which are also used as common highways by the traveling public. At some at least of the points where the roads were crossed by the fence gates were placed by the builder of the fence. After the death of French, which occurred in 1897, the administrator of his estate operated the property and made use of the inclosure as French had done until the fall of 1906, when it was acquired by other parties, for whom the defendant Hanley in April, 1907, became general manager of the ranch as well as the stock thereon.

It is insisted on his behalf that the trial court should have directed a verdict in his favor upon the ground that the evidence failed to show that he ever maintained or controlled the inclosure including the government land. An attentive consideration of the record, however, satisfies us that the facts and circumstances of the case as disclosed by the evidence were such that the jury might properly conclude that Hanley knew that the fence was originally constructed upon the ranch lands, in connection with natural barriers, so as to include within such inclosure a large amount of government lands, thereby giving the ranch owners practically exclusive possession and control of those public lands; that, when he became general manager of the ranch and of the stock upon it for the new owners, he came into control of the fences, which control he exercised by means of a general foreman and subordinate ones; and that the property under his management was operated as though the fences were maintained for the purposes for which they were originally constructed. Indeed, there was direct testimony to the effect that the inclosure was repaired by a foreman appointed by the defendant after he became manager. In respect to that, however, the court instructed the jury:

"The defendant can only be held responsible for his own acts and his own knowledge, and not for the independent acts of his foreman or subordinates not done pursuant to his instructions or with his knowledge or approval. So that if these fences were repaired or maintained by those in immediate charge of the property as a part of their general care and without orders from the defendant, and without the knowledge or approval of the defendant, he would not be guilty. And so the defendant cannot be found guilty under the indictment, no matter what the condition of the fences was in fact, if, as an agent for the property, he had no knowledge of the condition of the fence in its actual location and construction, so as to constitute an inclosure or bar-

rier, but understood that the fence was down and no obstruction, and after assuming charge of the property he did nothing personally, or by his instructions or counsel or with his approval or assent, to keep up the fence as such inclosure or obstruction. In arriving at your verdict, however, you will take into consideration the defendant's relation as a manager of the Harney Valley Development Company, his prior acquaintance with and knowledge, whatever it was, of the lands and the premises owned by that company, of the topography and lay of the country, of the manner in which the deeded lands or parts of them were inclosed, of his authority over the other agents and employés about the ranches concerned, and of all facts and circumstances appearing in evidence that have a tendency to throw light upon the subject; and, if from all this it appears that he aided or assisted, counseled, or advised the maintenance or control of said alleged inclosure in any way, then you should find him guilty. Otherwise, not."

It is true that there is uncontradicted evidence to the effect that the defendant told the agent sent by the Land Department of the government to examine the inclosure in question, that he thought the fences were down and open in places, and that, if they were not in a condition satisfactory to the government, he would make them so, and would willingly go with the agent in person for that purpose; still, if the fences under the defendant's control did in fact unlawfully inclose land of the government, we do not think it can be properly held that the defendant's offer to the land agent would render the offense nugatory. We are of the opinion that the evidence was such as to make proper the action of the trial court in refusing to direct a verdict for the defendant.

The remaining question relates to the instructions given and refused by the court. Any person may lawfully fence or otherwise inclose his own land, and may connect his fence or inclosure with that of an adjoining landowner, provided he does so in good faith. When, however, under the guise of inclosing his own land, he constructs or maintains such a fence or inclosure for the purpose and with the intention of inclosing public lands of the government, the act is unlawful. Camfield v. United States, 167 U. S. 528, 17 Sup. Ct. 864, 42 L. Ed. 260; Potts v. United States, 114 Fed. 52, 51 C. C. A. 678. The court below so instructed the jury, in effect, in the following language:

"It is sufficient within the intendment of the statute that the inclosure comprising any of such public lands was designated and intended by the person or individual constructing or maintaining the same to hinder or impede the ordinary ranging of stock, or its natural and free ingress from without, or egress from within, or is reasonably calculated in the manner of its construction or maintenance to accomplish a like result, or which serves to exclude or to hinder or impede other persons or the public from free and unrestrained access to and upon the lands so inclosed for the purposes for which any individual has the right of access to public lands. Nor is it essential that the person so constructing or maintaining the inclosure shall do so by fencing entirely his own, but he may accomplish the result by joining his fencing to that of others so as to make the barrier complete, or he may conjoin his fencing to natural barriers, such as ledges of rock, precipitous bluffs, steep declivities, or mountain ranges, or other natural obstructions, not readily passable, or which in their practical effect would impede or interrupt the ordinary ranging of stock, or which, together with the fencing, would prevent, obstruct, or impede in some measure the more natural and free passage of persons and individuals to and upon the public lands so inclosed. There is no controversy here as to the lands described in the indictment be-

ing a part of the public domain, and the defendant lays no claim to any of such lands, by entry or otherwise, with a view to their acquirement from the general government, so that these two elements of the offense charged may be taken as proven. The case, therefore, turns wholly upon the question whether the defendant maintained or controlled fences which, being joined onto the rim rock, constituted an inclosure as defined of such public lands. The government has described what fencing and rim rock or other natural barriers constitute the inclosure complained of by setting forth the beginning and ending point, and the courses and distances thereof, and it is thereby confined in its proof to the establishment of such an inclosure as is alleged. * * * The intent or purpose with which fencing or an inclosure was constructed or maintained, if so constructed or maintained, may be gathered from all the testimony showing the local conditions and environment, the ownership or want of ownership of the lands affected by the inclosure, their occupancy, and the use of which they are susceptible. Men do not build fences or construct or maintain inclosures except for a purpose. That purpose is usually manifest. It is to control in some degree at least the use or the manner of use and occupancy of the lands or premises inclosed. Indeed, an inclosure is the assertion of a claim of some right or title to the premises inclosed, and it operates as a notice to others of such claim. Nor does it affect such assertion of claim and notice that gates and bars that may be opened and closed are provided at convenient intervals in such fencing. These are primarily constructed for the use and convenience of the proprietor of the fencing, and usually only for others and the public when placed upon private easements or public highways. So that ordinarily any person breaking the close, or going upon the lands and premises inclosed for occupancy, or taking his stock thereon for pasturage, would be accounted a trespasser, a violator of private rights, or even a wrongdoer in a criminal sense; and thus is demonstrated the deterrent effect the maintenance of an inclosure about public lands will have upon those desirous of entering thereon for any purpose.

"A person has a right, under the law, to erect fences wholly upon his own land, and to maintain them if he so desires, and if incidentally such fences may obstruct or impede the ingress or egress of stock ranging upon the public lands, or the free passage of persons upon or over such lands, no one can complain, because a man has a right to do what he pleases with his own, so long as he does no willful injury to another. But he cannot make the construction of fencing upon his own lands a subterfuge for inclosing or preventing free passage upon the public lands. To make plain to you what I mean, I will allude to some of the facts as they appear in this case. The Harney Valley Development Company owns the narrow strip of land, consisting of 40-acre tracts, by legal subdivisions joining one upon another in continuous succession, running from Fish creek north 12¼ miles to the vicinity of the North fork of Little Krumbo creek; thence east about 2¾ miles; thence north 2½ miles; and thence east 2 miles, more or less, to a junction with the rim rock at McCoy creek, and another strip of like character running from Blitzen river west about 7¾ miles to a little beyond the road to Roaring Springs. Upon these narrow strips of land has been constructed but a single line of fencing for their entire length, which if conjoined upon the rim rock described, with barriers constructed in the draws of the rim rock, serves, with other fencing upon the north, to inclose 80,000 acres of the public lands. The lands comprised by the narrow strips are in very large proportion practically valueless for any purpose except for grazing. Now, if title to these strips of land was acquired and the fences were constructed thereon as a subterfuge or pretext, so that it could be said that the fences were constructed entirely upon private lands, the device could not avail the owner. The inclosure yet would be an inclosure of public lands within the inhibition of the statute. So a maintenance of such fence is likewise inhibited by the statute.

"You are the judges of the purpose for which this fencing was constructed in the first place, whether to inclose public lands or not; and, if so, whether it was maintained by the defendant as alleged in the indictment, and, if so, for what purpose."

This seems to us to state the law fairly in respect to the point there referred to. The difficulty, however, in the case is this: The court refused to give this requested instruction:

"The indictment declares the acts of the defendant complained of to have been committed prior to June 22, 1908, and it is uncontradicted in the evidence that the defendant assumed charge of this property in April, 1907, and that prior to that time he had no association or connection with it. You will therefore limit your consideration and determination to the defendant's own personal conduct from the time he assumed charge of the property up to June 22, 1908,"

—and, instead, gave to the jury this instruction, in respect to each of which actions of the court the plaintiff in error reserved an exception:

"It is not essential that the offense or offenses charged shall be shown to have been committed upon the exact date as alleged, but it is sufficient if it be established that the defendant committed the acts constituting the offenses charged at any time within three years prior to the finding of the indictment, which was March 20, 1909. You will therefore, under these instructions, determine whether the alleged inclosure complained of has been maintained by the defendant, William Hanley, either as manager or agent of the Harney Valley Development Company, or whether he has aided, abetted, counseled, advised, or assisted in its maintenance in any way and at any time within the three years prior to March 20, 1909."

Section 1 of the act of Congress of February 25, 1885, makes unlawful the acts charged against the defendant in the first count of the indictment, and section 3 of the act makes unlawful the acts charged against him in the second count. By the fourth section of the act it is declared:

"That any person violating any of the provisions hereof, whether as owner, part owner, agent, or who shall aid, abet, counsel, advise or assist in any violation hereof, shall be deemed guilty of a misdemeanor, and fined in a sum not exceeding one thousand dollars, and be imprisoned not exceeding one year for each offense."

While the fourth section thus makes it unlawful for any one to aid, abet, counsel, advise, or assist in any violation of the act, the indictment does not charge that offense against the defendant. But the court in the instruction last quoted told the jury to consider and determine, among other things, whether Hanley aided, abetted, counseled, advised, or assisted in the maintenance of the alleged inclosure in any way at any time within the three years prior to March 20, 1909. The evidence is without conflict to the effect that Hanley's connection with the management of the ranch only commenced in April, 1907, although there was evidence to the effect that he had resided in Harney county since 1879, and had from time to time visited the ranch during that period.

It is, of course, true that the proof is not to be limited to the exact date alleged in the indictment, but it is quite as true that an offense for which one stands indicted cannot be established in whole or in part by proof of his commission of an offense not included in the indictment. Whether or not Hanley aided, abetted, counseled, advised, or assisted the administrator of the estate of French or anybody else within three years next preceding the indictment in the maintenance

of the alleged inclosure was beside the charge upon which the defendant was on trial. It was his own alleged acts in unlawfully maintaining the fence, and in unlawfully excluding others from the government lands specified in the indictment, for which he was being tried, and it was prejudicial error on the part of the trial court to direct the jury to consider and determine whether the defendant aided, abetted, counseled, advised, or assisted somebody else to violate the provisions of section 4 of the act of Congress of February 25, 1885.

For this error, the jugment must be, and is hereby reversed, and the cause remanded to the court below for a new trial.