### MACKAY v. UINTA DEVELOPMENT CO.

(Circuit Court of Appeals, Eighth Circuit. November 10, 1914.)

No. 3411.

Public Lands ☞19—Right of Passage for Stock—Unlawful Obstruction.

Act Feb. 25, 1885, c. 149, § 3, 23 Stat. 322 (Comp. St. 1913, § 4999), which provides that "no person by force, threats, intimidation, or by any fencing or inclosing or any other unlawful means, * * * shall prevent or obstruct free passage or transit over or through the public lands,"

prohibits every method that works a practical denial of access to and passage over the public lands either by persons or stock, and the owner of a large quantity of railroad grant lands, comprising the odd-numbered sections, while the alternate sections are public lands, the entire tract being uninclosed, cannot by a warning notice deprive a stock owner of a reasonable right of way for his stock across the tract, or make him a trespasser and liable in damages because, in crossing, his stock necessarily passes over and consumes grass from some of the land of the private owner.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 25, 26; Dec. Dig. ☞19.]

Sanborn, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the District of Wyoming; John A. Riner, Judge.

Action at law by the Uinta Development Company against John C. Mackay. Judgment for plaintiff, and defendant brings error. Reversed.

Barnard J. Stewart, of Salt Lake City, Utah, for plaintiff in error.

John W. Lacey, of Cheyenne, Wyo. (T. S. Taliaferro, of Rock Springs, Wyo., and Herbert V. Lacey, of Cheyenne, Wyo., on the brief), for defendant in error.

Before SANBORN and HOOK, Circuit Judges, and POPE, District Judge.

HOOK, Circuit Judge. The Uinta Development Company sued Mackay for damages for trespass by trailing his sheep across and depasturing its lands in Wyoming. Mackay denied that his acts constituted a trespass, asserted a right to cross the public lands and to do what was necessary for its exercise, and counterclaimed for damages because the company obstructed his passage and wrongfully caused his arrest and criminal prosecution for trespassing. Upon a trial by the court without a jury, a general finding was made and judgment rendered for the company. There were no special findings.

For the purposes of this case the company may be regarded as the owner by purchase of all the odd-numbered sections in a large tract of land formerly a part of the land grant by the United States in aid of the construction of the Union Pacific Railroad. Almost all of the intervening even-numbered sections remained unoccupied public domain. The tract of land in question with its odd and even numbered sections extended 20 miles from north to south. The particular description in the petition of the company's holdings indicates that the tract was 15 miles from east to west. One of its witnesses testified that the distance was about 58 miles. The lands of the company and the public lands were open and unfenced, and there was nothing on the face of the earth by which they could be readily distinguished from each other without a knowledge of surveying. The country was adapted and largely devoted to the sheep industry. The company was so using its property and also the intervening and adjacent public lands. Mackay was likewise in the sheep business. His spring, summer, and fall ranges were north and northwest of the tract in ques-

tion. To the south of it was an unbroken tract of public land and also Mackay's winter range. The season required Mackay to take his band of sheep, about 3,500 head, from the north to his winter range on the south. The customary method was to drive sheep 10 or 12 miles a day, allowing them to graze on the way. The company warned Mackay not to cross its lands. It served a notice on him, setting forth its ownership "of all the odd-numbered sections" in the stretch of country indicated, and forbidding all persons from "trespassing thereon or from grazing or herding or driving any sheep or live stock thereon or across any of said lands, and from in any manner occupying or making use of any portion thereof." Mackay nevertheless started across with his sheep and at the company's instance was arrested on the way. This action for damages followed.

At the conclusion of the evidence Mackay asked the court for a declaration of law that, if it found from the evidence that the company was in the rightful possession of the odd-numbered sections and did not designate a course for him to follow; then as a licensee of the government he was entitled to select a reasonable way over which to trail his sheep, and if it further found that the way he selected was a reasonable one, and was used for the purpose of driving his sheep to and upon the public domain, then, as matter of law, he would not be liable in damages for crossing the company's sections. The court refused the request. There was substantial evidence of all the facts assumed, and upon a trial without a jury the request was a proper way to raise the question of law. Though the arguments have taken a wider range, it is the only question we need decide. Mackay claimed the right to trail his sheep over the even-numbered sections of the public domain and to do what else was necessary to secure it without subjecting himself to a charge of trespass. The company admitted his right as to the public domain, but warned him not to go over any of its lands on penalty of prosecution for trespass. The odd-numbered sections touch at their corners and their points of contact, like a point in mathematics, are without length or width. If the position of the company were sustained, a barrier embracing many thousand acres of public lands would be raised, unsurmountable except upon terms prescribed by it. Not even a solitary horseman could pick his way across without trespassing. In such a situation the law fixes the relative rights and responsibilities of the parties. It does not leave them to the determination of either party. As long as the present policy of the government continues, all persons as its licensees have an equal right of use of the public domain, which cannot be denied by interlocking lands held in private ownership.

Section 1 of the act of February 25, 1885 (23 Stat. 321, U. S. Comp. Stat. 1913, § 4999), declares unlawful, with some qualifications not material here, all inclosures and assertions of right to the exclusive use and occupancy of any part of the public lands of the United States. Section 3 provides "that no person, by force, threats, intimidation, or by any fencing or inclosing, or any other unlawful means, * * * shall prevent or obstruct free passage or transit over or through the public lands." Section 4 makes disobedience a misde-

*meanor.* This statute has been construed to prohibit every method that works a practical denial of access to and passage over the public lands. The offending person is held to have intended the natural consequences of his acts. Some thought at first that, notwithstanding the statute, they might accomplish the result prohibited by erecting fences on their own land not physically touching the public domain, and that any obstruction was an allowable incident of the exercise of a private right. But the Supreme Court said in Camfield v. United States, 167 U. S. 518, 525, 17 Sup. Ct. 864, 867 (42 L. Ed. 260):

> "If the act be construed as applying only to fences actually erected upon public lands, it was manifestly unnecessary, since the government as an ordinary proprietor would have the right to prosecute for such a trespass. It is only by treating it as prohibiting all 'inclosures' of public lands, by whatever means, that the act becomes of any avail."

Nor can the obstruction or inclosure be lawfully secured by connecting with the fences of other persons, or by taking advantage of natural obstacles, as by fencing to precipitous bluffs or ravines, or to bodies of water, thickets, etc. Thomas v. United States, 69 C. C. A. 157, 136 Fed. 159; Hanley v. United States, 108 C. C. A. 581, 186 Fed. 711; Lillis v. United States, 111 C. C. A. 362, 190 Fed. 530; Stoddard v. United States, 131 C. C. A. 18, 214 Fed. 566. In the recent Stoddard Case it was argued that section 3 of the statute prohibited the obstruction of free passage or transit over public lands of persons only, not of stock. We held otherwise, saying:

> "It is a well-known fact that the free herding and grazing of cattle on the public lands is a legitimate use to which they may be put, and we think Congress must have had the preservation and protection of this use in mind in the enactment under consideration."

This case illustrates the conflict between the rights of private property and the public welfare under exceptional conditions. It is difficult to say that a man may not inclose his own land, regardless of the effect upon others; but the Camfield Case, supra, has been recognized as sustaining the doctrine that "wholesome legislation" may be constitutionally enacted, though it lessens in a moderate degree what are frequently regarded as absolute rights of private property. Interstate Railway Co. v. Massachusetts, 207 U. S. 79, 87, 28 Sup. Ct. 26, 52 L. Ed. 111, 12 Ann. Cas. 555. This large body of land, with the odd-numbered sections of the company and the even-numbered sections of the public domain located alternately like the squares of a checker-board, remains open as nature left it. Its appearance is that of a common, and the company is so using the contained public portions. In such use it makes no distinction between them and its own holdings. It has not attempted physically to separate the latter for exclusive private use. It admits that Mackay had the right in common with the public to pass over the public lands. But the right admitted is a theoretical one, without utility, because practically it is denied except on terms it prescribes. Contrary to the prevailing rule of construction, it seeks to cast upon the government and its licensees all the disadvantages of the interlocking arrangement of the odd and even numbered sections because the grant in aid of the railroad took

that peculiar form. It could have lawfully fenced its own without obstructing access to the public lands. That would have lessened the value of the entire tract as a great grazing pasture, but it cannot secure for itself that value, which includes as an element the exclusive use of the public lands, by warnings and actions in trespass.

It is contended that the act of February 25, 1885, is applicable only when the government complains, and not in an action between private litigants. We think, however, that a private litigant cannot recover from another for an invasion of an alleged right founded upon his own violation of the statute. The erection of fences to accomplish what they sought by intangible means would have been a nuisance and a misdemeanor. Buford v. Houtz, 133 U. S. 320, 10 Sup. Ct. 305, 33 L. Ed. 618, was a suit by cattlemen who owned the odd-numbered sections of a railroad land grant to enjoin sheepmen from entering their lands to get at the intermingled sections of the government domain. Its authority here cannot be denied on the ground argued that it was a suit in equity, while this was an action in trespass at law. The result in the case cited did not go upon the ground of an adequate remedy at law. On the contrary, the court went to the root of the principles governing the rights of the parties. The complainants' claim, which was denied, is thus described:

"It seems to be founded upon the proposition that while they, as the owners of the 350,000 acres thus scattered through the whole area, are to be permitted for that reason to exercise the right of grazing their own cattle upon all of the land embraced within these 1,440 square miles, the defendants cannot be permitted to use even the lands belonging to the United States, because in doing this their cattle will trespass upon the uninclosed lands of plaintiffs. In other words, they seek to introduce into the vast regions of the public domain, which have been open to the use of the herds of stock-raisers for nearly a century without objection, the principle of law derived from England and applicable to highly cultivated regions of country, that every man must restrain his stock within his own grounds, and if he does not do so, and they get upon the uninclosed grounds of his neighbor, it is a trespass for which their owner is responsible."

Nor does the case at bar involve a deliberate intent to obtain the benefit of another's pasturage, as in Lazarus v. Phelps, 152 U. S. 81, 14 Sup. Ct. 477, 38 L. Ed. 363. The question here, which we think should be answered in the affirmative, is whether Mackay was entitled to a reasonable way of passage over the uninclosed tract of land without being guilty of trespass.

The judgment is reversed, and the cause remanded for a new trial.

SANBORN, Circuit Judge (dissenting). The general finding of the trial court, in view of the evidence in the record, in my opinion establishes these facts:

The plaintiff below was the owner of the odd sections and the United States was the owner of the even sections in the tract of land described in the opinion of the majority. For the purpose of taking his sheep from his summer ranch on the north of that tract to his winter ranch on the south of it, the defendant drove his sheep, over the protest and prohibition of the plaintiff, upon and along a strip of land three-fourths of a mile wide upon and across the entire length

or width of some of the plaintiff's sections of land, and caused his sheep to consume nine-tenths of the grass thereon, which was stored by it for the winter for the use of the plaintiff's animals, to the damage of the plaintiff in the sum of $25. Upon this state of facts the court rendered a judgment against the defendant for $25 and costs, and refused to make the declaration of law requested by the defendant and set forth in the opinion of my Associates.

The owner of land is not deprived of his right to recover the damages he sustains by the taking by another of his grass, growing grain, or timber from his land, or the mineral out of it, even if the taker has the right to cross his land; nor is the owner of land deprived of his right to recover his damages for the taking of such grass, timber, or mineral because he fails to point out to the taker where he can rightfully cross his land. I am unable to assent to the view that the refusal of the request in question was error: (1) Because, even if the defendant below had the right to cross the plaintiff's land with his sheep, it was, in my judgment, neither the duty of the plaintiff nor a condition of its right to recover for the consumption of its grasses by the sheep of the defendant that it should select and designate for him a route for him to drive his sheep over the plaintiff's land; and (2) because the declaration requested was immaterial to the plaintiff's right to recover for the taking of the grass, and it clearly appears that the refusal to give it could not have prejudiced the defendant. Whether the defendant had such a right to cross with his sheep or not, he had no right to drive his sheep over, to hold them upon, and to cause them to consume the grasses on a strip three-fourths of a mile wide, and the plaintiff was entitled to the $25 damages which the court found the plaintiff sustained thereby. The taking of these grasses over so wide a strip across the width or the length of such sections of land was not, and the general finding for the plaintiff was, in my opinion, in effect a finding that it was not, a reasonable way for the defendant to cross these sections, and even if it was the defendant could not take the grasses of the plaintiff over so large a tract of land without liability for the damages for the taking.

For these reasons, it seems to me that the declaration of law requested was immaterial to the right of the plaintiff to recover and to the amount of the recovery, and the failure to give it could not have been prejudicial to the defendant. There was no prejudicial error in the trial, and the judgment below should be affirmed.