Jastro v. Francis, 24 N. M. 127.

[No. 2096, February 16, 1918.]

JASTRO et al. v. FRANCIS et al.

SYLLABUS BY THE COURT.

1. Where a party is the owner of the odd-numbered sections of land, acquired by purchase from a Railroad company of grant lands, the odd-numbered sections having been granted by the government to aid in the building of the railroad, and the even-numbered sections are largely owned by the government, the remainder of the even-numbered sections being either school sections or held in private ownership, a court of equity will not, at the instance of the owner of the odd-numbered sections, enjoin an owner of live stock from grazing his sheep or cattle on the odd-numbered sections, in the absence of a legal fence maintained by such owner, or compliance by such owner with the provisions of section 39, Code 1915, as such an injunction would have the effect of giving to the owner of the odd-numbered sections absolute control and dominion over the government lands, included in the townships embracing such privately owned odd-numbered sections.

P. 133

2. Under section 39, Code 1915, an owner of private lands may protect the same from trespass by stock under herd, by

conspicuously marking the boundaries of the same, and posting notices in conspicuous places thereon warning against trespass or serving writ'en notice giving description of such lands by metes and bounds. *Held*, that where it is not shown that a party knows the boundaries of privately owned land, surrounded by government domain, he cannot be enjoined from driving his flocks and herds upon such lands, unless the owner has complied with this statute.                                P. 137

### On Motion for Rehearing.

3. In the exercise of the right of way over sections held in private ownership, the utmost reasonable care is to be exercised by the claimants of the right, so as to do the least damage to the servient esta'e, which, practically applied, would require herds to cross at section corners rather than at any other place upon the servient sections.                P. 142

Appeal from District Court, McKinley County; Raynolds, Judge.

Suit for injunction by H. A. Jastro and A. B. McMillen against Elias Francis, Narciso Francis, and others. From a judgment awarding permanent injunction and damages, defendants appeal. Judgment reversed, and cause remanded, with instructions to enter judgment for defendants, and to dismiss the complaint.

Rodey & Rodey, of Albuquerque, for appellant.

The remedy of injunction will not be permitted to be used to circumvent the national anti-fence law.

Healy v. Smith, 83 Pac. 583; Richards v. Sanderson, 89 Pac. 769; Hill v. Winkler, 21 N. M. 5; 23 Stats. (U. S.) 321; Buford v. Houtz, 133 U. S. 320; Light case, 220 U. S. 524; Camfield case, 167 U. S. 518; Mackey v. Unita Dev. Co., 219 Fed. 116; Curtin v. Benson, 222 U. S. 78.

A. B. McMillen, of Albuquerque, for appellees.

Jastro v. Francis, 24 N. M. 127.

Injunction is the remedy to prevent repeated or continuing trespasses.

22 Cyc. 768; U. S. Freehold etc. Co. v. Gallegos, 89 Fed. 769; 2 Beach, Inj. Secs. 1129-1146; Uline v. R. R. Co., 4 N. E. 536; Tallman v. R. R. Co., 23 N. E. 1134; Galway v. R. R. Co., 28 N. E. 479; Evans v. Ross, 8 Pac. 88; Lazarus v. Phelps, 152 U. S. 85; St. Louis Cattle Co. v. Vaught, 1 Tex. Civ. App. 388-390; Kerwhacker v. Cleveland etc. R. R., 3 Ohio State 172; Union Pacific Ry. v. Collins, 5 Kas. 166-177; Larkin v. Taylor, 5 Kas. 433; Delaney v. Erickson, 11 Neb. 533; Otis v. Morgan, 61 Ia. 712; Willard v. Mathesus, 7 Colo. 76; Harrison v. Adamson, 76 Ia. 338, 41 N. W. 34; Larkin v. Taylor, 5 Kas. 433, 446; Knight v. Abert, 6 Pa. St. 472; Sabine etc. Ry. Co. v. Johnson, 65 Tex. 389; St. Louis Cattle Co. v. Vaught, 1 Tex. Civ. App. 388, 20 S. W. 855; Poindexter v. May, 98 Va. 143, 34 S. E. 971; Delaney v. Erickson, 11 Neb. 533, 10 N. W. 451; Otis v. Morgan, 61 Ia. 712, 17 N. W. 104.

Appellees were not bound to force against a wilful trespass.

Sec. 39, 2340, 2341, Code 1915; Sears v. Fewson, 15 N. M. 132; Buford v. Houtz, 133 U. S. 320; Light v. U. S., 220 U. S. 537; Monroe v. Cannon, 61 Pac. 321; Powers v. Kindt, 13 Ks. 74.

### SUPPLEMENTAL BRIEF OF APPELLEES.

As to fence law of U. S. see:

Secs. 4997, 4999, U. S. Com. Stats. Ann. 1916.

There was an implied reservation of a right of way by necessity.

U. S. v. Hindg, 208 Fed. 618.

Appellees have exclusive right of use and occupancy of lands owned by them.

Camfield v. U. S. 167 U. S. 528; U. S. v. Kindg, 208 Fed. 623.

### STATEMENT OF FACTS.

Appellants Elias Francis and Narciso Francis were partners, doing business under the firm name of Elias Francis & Son. They were engaged in 'the raising of sheep and cattle, and had under lease a 42,000-acre tract of land immediately east of townships 15 and 16 north of range 7 west, N. M. P. M. Within the two townships named they owned three patented ranches of 160 acres each, and had leased school lands belonging to the state of New Mexico within such townships aggregating something over 1,800 acres. They also owned certain lands and had others leased in the two townships immediately west of townships 15 and 16 aforesaid. The odd-numbered sections in the townships in controversy were railroad grant lands belonging to the Atlantic & Pacific Railroad Company. In 1915 and for some time prior thereto appellants held these odd-numbered sections under lease from the railroad company.

The Fernandez Company, a corporation, the stock of which was largely owned by the appellees herein, owned the Bartholome land grant and the Felipe Tafoya land grant south and east respectively of said townships 15 and 16 north of range 7 west, and township 15 and 16 north of range 8 west, and held under lease from the railroad company the odd-numbered sections in townships 15 and 16, range 8 west. Both the Fernandez Company and appellants ranged their cattle and their live stock over lands in the townships in both ranges, and from time to time controversies arose because the sheep of appellants were grazing upon the range of the Fernandez Company, and the Fernandez Company's cattle grazed on the range of appellants.

On the 9th day of April, 1915, the Fernandez Company and Elias Francis & Son entered into a written contract by which it was agreed that a line of iron posts should be erected on the range line between ranges 7 and 8 west; that Francis & Son should surrender all their rights of pasturage upon all lands west of such range line to Fernandez Company, Francis & Son at

said time owning and having under lease certain lands west of such range line; that Fernandez Company should likewise surrender all rights of pasturage upon lands east of such range line in said townships named, such corporation at that time owning and having under lease certain lands east of such range line; that Francis & Son would keep their sheep and cattle on lands east of such range line, and Fernandez Company should keep their cattle west of the same. The contract was to continue in existence for a period of ten years, with the proviso, however, that if, before the expiration of five years, it should have been established as a principle of law by competent public authority in New Mexico, that the right by injunction does not exist to prevent sheep from being driven across leased railroad or school lands in order to gain access to enjoy the free use of the government sections intervening, then and in such event either party was to have the right to terminate the agreement at the end of five years, by giving six months' notice in advance of an intention to so terminate the same.

In August, 1915, the lease of Francis & Son for the railroad lands in townships 15 and 16 north of range 7 west expired, and the railroad company refused to renew the same. Francis & Son, however, continued to graze their flocks upon the lands in said two townships. In 1916 A. B. McMillen and H. A. Jastro, appellees herein, purchased from the railroad company all the odd-numbered sections in said two townships, and in the fall of 1916 the foreman of the Fernandez Company ordered the herders of appellants to take their sheep from the lands in the two townships. The contract for the purchase of the lands was made in the name of the Fernandez Company, but was immediately thereafter assigned to Jastro & McMillen by the Fernandez Company, by A. B. McMillen, as president. Practically all of the even-numbered sections in said two townships, except school sections 16 and 36, and 2 and 32, were part of the public domain.

In November, 1916, appellee filed a complaint in the
district court of McKinley county against appellants, in
which they set up the facts that they were the owners
of the, odd-numbered sections of land in townships 15
and 16 north of ranges 7 and 8 west; that Francis &
Son were the owners of large herds of sheep; that they
drove about 18,000 head of sheep upon' and over the
lands of appellees during the month of October, 1916,
trampled down and ate up the grass upon said lands of
appellees, despite warnings to keep their sheep off of
said lands; that appellants threatened to continue to de-
pasture the same; that owing to the nature of the in-
jury appellees had no adequate remedy at law, and an
injunction was prayed restraining appellants from go-
ing upon or across any of said odd-numbered sections
with their sheep and pasturing thereon, and for dam-
ages in the sum of $5,000. Appellants answered, deny-
ing that they were notified to refrain from going upon
the lands in question; denied that there were irrepara-
ble damages; alleged that they were financially respon-
sible; denied that they threatened to continue trespass-
ing upon said lands.

By the sixth paragraph of the answer it was set
forth that appellants, for many years and long before
appellees were in that section of the country, were pos-
sessed of property there, and were stock raisers in and
on the lands described in the complaint; that practical-
ly all of said country was unfenced pasture lands, and
that it was made up of state lands, public domain, rail-
road lands, and small ranches, all of the latter being
owned by parties to this suit; that appellants were the
owners of several private land grants in that vicinity,
and had title in fee simple to and improvements upon
several ranches of about 160 acres each in the townships,
for which they paid more than $10,000, and that they
had put upon such ranches large and valuable improve-
ments; that appellants had much state land in these
townships, and that if any of the appellants' sheep went
upon appellees' land it was owing to the fact that ap-

pellees had neither marked nor fenced any land they might own in said townships, and because of lack of notice of claim to such land by appellees; that said trespass upon the lands of appellees was unintentional because of the fact that such lands were not marked so that it was possible for appellants' herders to determine when they were upon appellees' lands. This paragraph of the answer further sets up the fact that if they trespassed upon the lands of appellees, it was by leave and license of the appellees themselves under their contract executed under the name of the Fernandez Company with appellants on April 9, 1915, which ran for a period of five years, a copy of which contract was annexed to the answer. Appellants also filed a cross-bill, which is not material, hence need not be further referred to.

The court, upon motion, struck out paragraph 6 of the answer, and after hearing proof awarded appellees a permanent injunction restraining and enjoining appellants from driving their sheep upon any of appellees' land described in their complaint, or in any other way pasturing or using appellees' land for driveways, or for herding any of their sheep upon any of appellees' land, ''except that the court does not restrain or enjoin the said defendants (appellants) or any of them from driving their sheep over any portion of plaintiffs' (appellees') lands by any traveled road or highway now in use, or that may be hereafter established, and for a distance of 30 feet on each side of the center line of said road or highway.''

Judgment was given also for $2,000 damages against appellants. It is to review this judgment that this appeal is prosecuted.

## OPINION OF THE COURT.

ROBERTS, J. (after stating the facts as above). [1] Appellants have filed assignments of error setting forth 13 alleged errors. The brief filed does not undertake to discuss each of the assignments, and the points

therein presented are not arranged in logical order.
We think, however, appellants present one point which
is decisive of the case and which should be considered
by the court.    It is to the effect that the trial court
erred in granting appellees injunctive ·relief because,
under the facts developed by the evidence, appellees
were not entitled to the inujnction or the damages
awarded.

By Act Cong. Feb. 25, 1885, c. 149, entitled ''An act
to prevent unlawful occupancy of the public lands''
(23 Stat. at Large, 321), the assertion of a right to the
exclusive use and occupancy of any part of the public
lands of the United States in any state or territory,
without claim, color of title, or asserted right, was de-
clared unlawful and prohibited.    This act also prevent-
ed the inclosure of public lands.    In the case of Cam-
field v. United States, 167 U. S. 518, 17 Sup. Ct. 864,
42 L. Ed. 260, it was held that the owner of the odd-
numbered sections in a township could not, by construct-
ing a fence upon his lands, inclose the even-numbered
government sections.

Equity regards substance and not form, or, as the
principle is expressed in the shape of an equitable max-
im, ''Equity looks through forms to substance.''    If
the owner of the odd-numbered sections in a township,
the even-numbered being government domain, and none
of the land being fenced, can procure the aid of the
court of equity to restrain others from pasturing their
animals upon said even-numbered sections, or driving
their stock across any portion of such odd-numbered
sections, he would be able to accomplish indirectly,
and by the aid of a court of equity, that which he could
not do directly, viz. maintain the exclusive use and
occupancy of that part of the public domain so situat-
ed.    That appellees expect to pasture, not only the odd-
numbered sections in the two townships which they own,
but the government lands, is apparent, for it would be
physically impossible for them to utilize their own lands,
unfenced as they are, without also grazing the govern-

ment' lands. The injunction, if sustainable, in its practical effèct is every whit as effective as a fence surrounding the entire tract would be, in excluding appellants from using the government land in the townships, and the same nostrum could be readily applied to all others who might seek to graze their animals upon such government land. In other words, the court fences the land for appellees by its writ of injunction, and incloses for them a large area of government domain, and does it much more efficiently than the parties did in the Camfield case. There Camfield erected swinging gates at each section line in the fence to afford access to so much of the public domain as was inclosed; while here no means of ingress and egress are afforded, save by a few isolated roads which may·or may not touch any of the government sections.

Appellants argue that a denial of the writ of injunction herein would be the taking of private property without just compensation, but this argument is without merit. By following the local statute of the state, hereinafter referred to, appellees can prohibit appellants from depasturing the lands owned by them, if not precluded by other equitable consideration, but they cannot prohibit appellants or others desiring to pasture the government even-numbered sections from crossing with their flocks from one government section to another, where such sections corner, or in some reasonable manner. In the case of Buford v. Houtz, 133 U. S. 320, 10 Sup. Ct. 305, 33 L. Ed. 618, an identical question was brought before the Supreme Court of the United States upon appeal from the Supreme Court of the state of Utah. 5 Utah 591, 18 Pac. 633. In that case Buford and others were the owners of the railroad odd-numbered sections in a given locality in the state of Utah. Houtz and others were raisers of sheep, and pastured their sheep upon the public domain and other lands in the townships within which Buford and others owned such odd-numbered sections. There, as here, the owners of the odd-numbered sections sought to ob-

tain a writ of injunction prohibiting the owners of the sheep from depasturing their lands. The court held that there was an implied license growing out of the custom of nearly 100 years that the public lands of the United States should be free to the people who seek to use them, where they are left unfenced, and no act of the government forbids their use. The court denied their right to injunctive relief. The Utah court, in discussing the question, said:

"If this injunction were granted, it would become obligatory for all settlers passing through the country, and all herdsmen, to be constantly hunting the corners and boundaries of the plaintiff's lands, none of which lands are fenced. It would be a source of great vexation and annoyance to the settlers and herdsmen, and virtually prevent their use of the public lands. The plaintiffs have had the privilege of passing over government lands in reaching their lands, and have had the privilege of pasturing on government lands in connection with their own. As long as they do not fence their lands, they ought not to complain that other people use their lands in the manner they had used the public lands."

The state of Utah, at the time this question was raised, had a fencing statute somewhat similar to our sections 2340 to 2345, inclusive. In a late case (McKay v. Uinta Developing Co., 219 Fed. 116, 135 C. C. A. 18), the Cireiut Court of Appeals, Eighth Circuit, in an opinion by Judge Hook, held that the act of February 23, 1885, above referred to, prohibits every method that works a practical denial of access to and passage over the public lands, either by person or stock, and that the owner of a large quantity of railroad government lands, comprising the odd-numbered sections, the alternate sections being public lands, the entire tract being uninclosed, cannot by a warning notice deprive a stock owner of a reasonable right of way for his stock across the tract, or make him a trespasser and liable in damages, because, in crossing, his stock necessarily passes over and consumes grass from some of the land of the private owner.

Jastro v. Francis, 24 N. M. 127.

[**2**]   In this state we have another statute (section 39, Code 1915) which reads as follows:

"It shall be unlawful for any person, persons, company or corporation, or their or either of their agents or employees having charge of any drove of bovine cattle, horses, sheep, goats or other animals to permit or allow such herd of animals to go upon the lands of others in this state for the purpose of grazing or watering upon any waters upon such lands, without the permission of the owner or legal claimant, or his or their agent.   The provisions of this section shall apply not only to titled lands in this state, but to any lands upon which any person may have a valid existing filing under the laws of the United States, or any lands which may be leased by any person from the state of New Mexico.

"Any person, persons, company or corporation who may claim the benefits of the protection of this section, shall carefully and conspicuously mark the line or lines of his or its lands, so that such mark may be easily seen by persons handling such droves, flocks or herds of animals, and shall post a notice upon such land conspicuously, warning against trespassing thereon; or shall serve personal written notice giving description of such land by government surveys or by metes and bounds."

Appellees did not allege or show a compliance with this section.   Had they complied with its provisions they would doubtless be able to prevent appellants from depasturing their lands, save as it might become necessary in crossing from one section of the government domain to another by the most accessible route.   Under this section it is possible for the owner of private lands to prevent the depasturing of the same by others by conspiculously marking the boundaries of the same, so that those in charge of flocks or herds of animals will be able to know where the lines are, and prevent trespassing thereon by animals under their charge.   After marking the boundaries as provided by the statute, they are able to prevent trespassing therein by either of two methods:   (1) by posting notices on the land in a conspicuous place warning against trespass; or (2) by serving a written notice upon parties sought   to be bound not to trespass upon such lands.   Appellees did not comply with this statute.   On their behalf, however,

it is contended that neither the fencing statute nor said section 39 justifies a willful trespass, and rely upon the case of Light v. United States, 220 U. S. 523, 31 Sup. Ct. 485, 55 L. Ed. 570. That was a suit instituted by the government of the United States to enjoin Light from trespassing upon a forest reserve in the state of Colorado. There is evidence showing that Light knew the boundaries of the forest reserve, and deliberately turned out his cattle so that they would go upon the same, and he admitted that he intended for his cattle to go upon such reservation, and proposed to continue to permit them to do so.

The Light case had no application to the present case, because of said section 39 of our Code, and the situation of the land. Under the implied license from the government, appellants had a right to graze their sheep and cattle upon the even-numbered sections of public domain within the two townships. Appellees could not lawfully exclude them from exercising such right. Hill v. Winkler, 21 N. M. 5, 151 Pac. 1014. So long as the government of the United States extended to them this implied privilege, they were as much entitled to pasture the government sections as were appellees to pasture their own lands. They had no means of knowing where the section lines were, and which sections belonged to appellees, without having the lands surveyed and the lines marked. In the Light case, the defendant knew the boundary of the reserve, and purposely grazed his cattle thereon. No statute similar to our section 39 was asserted to exist in Colorado, and such a statute might have no application, were it shown that a party was familiar with the boundaries of private property, and deliberately depastured the same with his animals.

In New Mexico, as in the other states, comprising vast areas of government land where there are but small portions of the land owned in private ownership, it has been the custom always to turn animals loose for grazing purposes, and the owner of the same has not been held liable for the depasturing by such animals of pri-

vately owned lands, except where such liability has been created by fencing statutes, or otherwise by statute. Clearly, if appellants were the owners of cattle, and had turned the same loose upon the public domain, and such animals had wandered upon appellee's lands, they would not be entitled to damages for the depasturing of their lands by such cattle, unless they were able to show that their lands had been fenced as required by the statute.

Appellees argue, however, that a different rule prevails as to sheep which are always under the direct control of a herder or caporal; that in the case of sheep, where they go upon private lands and depasture the same, a willful trespass is necessarily presumed because such sheep are under the control of such herder or caporal. This argument, followed to its logical conclusion, would result in repeated damage cases by owners of private lands unfenced and without mark or monument to indicate the fact that they were under private ownership, where they have been depastured by the sheep of another. In various parts of the state where the government domain is utilized for the pasturing of sheep, there are isolated tracts owned by private individuals, unfenced and unmarked. If we should adopt the rule contended for by appellees the sheepmen would be required to be vigilant, indeed, in keeping an accurate record of the entries upon the public domain, and what lands were held in private ownership, and the services of a surveyor would be almost constantly in demand by each individual sheep raiser in order that he might escape liability in damages for trespassing upon such private lands.

Section 39, Code 1915, was enacted, we believe, for the purpose of affording protection to the owners of private lands against flocks of sheep and other animals under herd, and that only by a compliance with such section is the owner of private lands able to secure redress in damages for the depasturing of the same, by flocks under herd, unless such a complainant is able to show

knowledge on the part of the herder of the lines of such privately owned lands. In other words, unless the owner of private lands unfenced marks the same as required by such section, and posts warning notices thereon, or serves a written notice as therein provided for, or shows knowledge on the part of the herder as stated, he cannot maintain an action to recover damages for the depasturing of the same by another, nor can he maintain a suit in injunction to prevent such depasturing.

Another question is presented by appellants to the effect that a court of equity should treat appellees herein as bound by the contract made by Fernandez Company with appellants, and should award them no relief. Under the doctrine found in Fletcher's Ency. on Corporations, vol. 1, § 42, and cases therein cited, it might be that the court should so treat appellees. In the case of Linn & Lane Timber Co. v. United States, 196 Fed. 593, 116 C. C. A. 267, will be found an interesting discussion of the same question. In view of our conclusion, however, it is not necessary to consider this point.

For the reasons stated, the judgment of the district court will be reversed, and the cause remanded, with instructions to enter judgment for appellants, and to dismiss appellees' complaint; and it is so ordered.

HANNA, C. J., and PARKER, J., concur.

### ON MOTION FOR REHEARING.

ROBERTS, J. In their motion for rehearing filed herein, appellees have called to the attention of the court an error in the statement of facts, in this: It is stated that the appellants were the owners, under lease, of a 42,000-acre tract of land immediately east of townships 15 and 16 north, range 7 west, N. M. P. M., and that the stock of the Fernandez Company was largely owned by appellees. Further that "on the 9th day of April, 1915, the Fernandez Company and Elias Francis & Son entered into a written contract by which it was agreed that a line of iron posts should be erected on the range line between ranges 7 and 8 west," etc.,

and the remainder of the third paragraph in the statement of facts. All these facts were alleged in appellants answer or cross-complaint, but were stricken out on motion of appellees by the trial court. The action of the court in striking out the same was assigned as error, but was not considered by this court, as we did not find it necessary to pass upon the question presented. The sixth paragraph of the answer, the material facts therein alleged being set forth in the statement of facts, was likewise stricken by the trial court. As our conclusion was not influenced by the facts set forth in the pleadings filed by appellants, stricken as stated by the trial court, such facts could well have been omitted from the statement. I have carefully considered the motion filed for a rehearing and the able brief in support of the same, but find no reason for departing from the conclusion reached in the former opinion. The motion for rehearing will therefore be denied.

PARKER, J. (concurring). I concur in the denial of the motion for rehearing in this case. In so doing I desire to state that I feel bound by the controlling authority of the Circuit Court of Appeals and of the Supreme Court of the United States as to the right of the implied licensee to graze the public domain, and in so doing, if necessary, to cross lands held in private ownership. The holding of the federal courts is based upon the provisions of Act Feb. 25, 1885, c. 149, 23 Stat. 321, which has been interpreted by them to absolutely prohibit any person, by any means, from obstructing the free passage or transit over or through the public lands. And in the case of the owner of alternate railroad sections, he is held not to have the right, by any means whatever, to prevent the passage to or use of the even-numbered sections within the range of his holdings of odd-numbered sections, where such even-numbered sections are owned by the government. This conclusion is contrary to the ordinary rules governing property rights, and is no doubt induced by the terms of the stat-

ute as construed. A different conclusion, which commends itself to me, was reached in United States v. Rindg (D. C.) 208 Fed. 611. Feeling bound, however, by the decisions referred to in the opinion of Mr. Justice Roberts, I concur in the disposition heretofore made of this case, with such correction in the statement of facts as has been made by him.

[3] In regard to the right of way over the sections held in private ownership, I think the well-known principles governing easements should apply, to the effect that in the exercise of the easement the utmost reasonable care is to be exercised by the claimant of the easement so as to do the least damage to the servient estate. Practically applied to such circumstances as exist in this case, these principles would require the crossing of herds of animals at section corners, rather than at any other place upon the alternate sections held in private ownership.

HANNA, C. J., concurs in the foregoing.